# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN ALBERT KROPP** | : | **Case Number:** 4:22-cv-1901 |
| c/o Barron, Peck, Bennie & Schlemmer | : | |
| 3074 Madison Rd. | : | |
| Cincinnati, Ohio 45209 | : | |
| | : | **Judge:** |
| | : | |
| Plaintiff, | : | |
| -vs- | : | |
| | : | |
| **THE CITY OF NEWTON FALLS** | : | |
| 612 West Broad Street | : | |
| Newton Falls, OH 44444 | : | |
| | : | |
| And, | : | |
| | : | |
| **DAVID YOST** | : | |
| (official capacity) | : | |
| 30 E. Broad St., 14th Floor | : | |
| Columbus, OH 43215 | : | |
| | : | |
| Defendants. | : | |

---

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

---

Plaintiff Brian Albert Kropp states the following for his Complaint against Defendant the City of Newton Falls and Defendant David Yost:

### INTRODUCTION

1. This is an Action against a government that has decided to utilize an unconstitutional statute to criminally punish a citizen for criticizing its Councilmembers.  Defendant's Council has a history of using viewpoint-based rules to intimidate and threaten any member of the public, who dares

personally criticize them or suggests that they are acting with impropriety. The price of disrespect in Newton Falls is to face its police power. Indeed, Defendant expressly stated, "you will respect your representatives" when it discussed why it wanted to prosecute Plaintiff Kropp for his critical speech. This Court has already ordered Defendant to not enforce viewpoint-based rules because it has unlawfully silenced speech in the past, and Defendant is currently violating that injunction. Moreover, Defendant is threatening to prosecute Plaintiff Brian Kropp with a viewpoint-based statute that criminalizes speech that "outrages the sensibilities" of a government body during a meeting. R.C. § 2917.12 expressly criminalizes any "utterance, gesture, or display which outrages the sensibilities of the group." Defendant Yost is the Ohio Attorney General, and he is the state agent with the authority and power to enforce this unlawful Statute. This Court should enjoin Defendant Newton Fall's retaliation. And it should enjoin the enforcement of R.C. § 2917.12 because it is unconstitutionally vague, overly broad, and criminalizes viewpoints.

## PARTIES

2. Plaintiff Brian Kropp ("Kropp") is a resident of the City of Newton Falls, Ohio.

3. Defendant the City of Newton Falls ("Defendant") is a city located in Trumbull County, Ohio.

4. Defendant David Yost ("Yost") is the Attorney General for the State of Ohio, and he is the state agent with the authority to enforce its criminal laws. He is named here in his official capacity.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction to hear this case because this Action is filed under 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

6.  Venue is proper here because these events described in this Complaint occurred in Trumbull County, OH.

## BACKGROUND INFORMATION

7.  Defendant is a city, and it has a Council of five members.

8.  Currently, because of a vacancy, only four members sit on its Council.

9.  Defendant has a pattern of restraining and chilling speech based upon critical viewpoints.

10. In fact, Defendant has Council Rules that demand that no councilmember personally criticizes another councilmember during a meeting, and that no councilmember may accuse another member of impropriety.

11. In addition, Defendant has rules for public participation that restrain any "comments" that are of a "personal nature" and any "suggestions" of "impropriety."

12. This rule specifically states the following:

> **Accusations** or **suggestions** of **impropriety** or **illegal conduct** and/or comments or **attacks of a personal nature are prohibited**. The presiding officer may issue a warning the first time that a speaker fails to abide by this rule but shall declare the balance of a speaker's speaking time to have been forfeited if a subsequent offense should occur.  (See Verified Complaint at Exhibit 1, pg. 7).

13. Recently, Defendant used this Rule to silence a public critic named, Adam Zimmermann ("Zimmermann"), because Zimmermann criticized the City Manager for her past criminal charges of fraud.

14. Zimmermann also criticized councilperson Tesa Spletzer ("Spletzer"), because among other things, she was caught on video spitting at Newton Falls' police officers after she was arrested for an OVI.

15. Defendant further abused its zoning police power to charge Zimmermann with a violation for signs that politically criticized Defendant.

16. Zimmermann filed a Complaint in this Court, and he filed a Motion for Preliminary Injunction.[1]

17. Defendant ultimately entered an agreed injunction to no longer restrain speech that is personally directed or suggests Defendant's impropriety, and that it would no longer use its police power to punish Zimmermann's viewpoints.

18. As this Court will see below, Defendant is already violating this injunction and again threatening people for suggesting that councilmembers have acted improperly.

19. Plaintiff Kropp is a known critic of Defendant, and Defendant's Council has expressed animosity towards his viewpoints in the past.

20. In fact, Defendant once appointed Kropp to sit on its Council.

21. Kropp refused to submit to an unlawful search of his bodily fluids as a condition of that appointment, and he criticized Defendant for demanding he submit bodily fluids in violation of the Fourth Amendment.

22. Suffice it to say, Defendant did not appreciate Kropp's criticisms.

23. Kropp has continued to criticize Defendant's abuses of power and conduct both in and out of public meetings.

---

[1] See Case No. 4:22-cv-757, Verified Complaint.

24. Kropp attended Defendant's Council meeting on October 5th, 2022.

25. During this meeting, Kropp criticized Defendant's Council during public participation.[2]

26. Kropp had three minutes to speak.

27. When he was finished, Kropp did continue to criticize the Council for what he believes is their inappropriate conduct.

28. The presiding officer, Mayor Kenneth Kline ("Kline") then asked Kropp to leave.

29. Kropp left, and he did not resist.

30. Kropp did not physically threaten any councilmember, and he did not engage in any fighting words.

31. Kropp did not intend to disrupt the meeting, or its function.

32. It was not Kropp's purpose to interfere with the meeting at all.

33. On the contrary, Kropp's comments and his purpose were to tell the Defendant's Counsel that he believes they are incompetent and terrible government leaders.

34. And when he was done, he left, the meeting functioned, and Defendant was able to finish its business.

35. However, Mayor Kline then gave a very long and angry speech, where he scolded both Kropp and the entire public for their criticisms of their representatives.

---

[2] See https://www.youtube.com/watch?v=1Idgbg4nrsA, which is video of Kropp's removal as well as Defendant's very long, angry, and threatening speech aimed at scolding the public for critical speech.

36. Kline specifically stated his frustrations that the community criticizes the Council to "hurt" them.

37. He quasi-threatened the public and stated, "say it in my driveway" and "pull into my driveway and insult me like that...come into my backyard."

38. He then started complaining that someone in the public talked about how "stupid" the City Manager was on Facebook.

39. He then carried on about how he was fed up with people telling Defendant that they should "all resign," which is what Kropp had just got done telling Defendant before he was asked to leave.

40. He then complained about how he tries his best, but people on Facebook call him stupid.

41. Kline complained that some of the things people say on Facebook are embarrassing.

42. Then, Councilperson John Baryak ("Baryak") immediately began to complain that Kropp "degraded" him.

43. He also addressed Kropp's other criticisms.

44. Councilperson Spletzer then complained about the "know-it-alls" on Facebook.

45. She then discussed how "Brian" [Kropp], and "everybody's an attorney."

46. She then stated, "if you want my job, come get it!"

47. Then, the City Manager called Facebook "public enemy no. 1" because she does not like the criticisms on Facebook.

48. Defendant was clearly furious with the content of Kropp's remarks, his demands they resign, and his and the public's criticisms regarding Council's performance that occur outside of Council meetings.

6

49. Defendant then set out on a campaign to retaliate against Kropp because of his criticisms inside and outside of Council meetings.

50. In fact, Defendant then called a sham, "emergency meeting," where Defendant entered an unlawful executive session to discuss hiring a special prosecutor to charge Kropp for disruption of its meeting.

51. This was clearly not their purpose.

52. In fact, on October 19, 2022, Defendant held another public meeting, where it passed an ordinance to hire a special prosecutor to either prosecute Kropp for his viewpoints or threaten Kropp with prosecution to chill his viewpoints.

53. In addition, Defendant threatened other members of the public that same night in violation of this Court's injunction, and Mayor Kline even ended the meeting warning the entire public about future criticisms of Defendant's improprieties.

54. During the meeting, Councilmember Baryak motioned to pass the ordinance to hire a special prosecutor to punish Kropp.[3]

55. In a poor attempt to cover up his retaliatory intent, Baryak began his speech with the phrase, this is "not about the First Amendment" before continuing to exhibit that it was certainly about the First Amendment.

56. In fact, Baryak immediately began to describe his disdain for Kropp's statements, and he pointed out that Kropp made a comment about Baryak's hearing that Baryak considered a dig at his disability.

57. Baryak expressly stated that Kropp "made fun of my disability" and that "I can't hear" while explaining why he wanted to criminally punish Kropp.

---

[3] https://www.youtube.com/watch?v=JW1JADCiB6Y

58. Baryak continued that "I don't feel that has any place."

59. He then continued that he was not going to name the guy [Kropp] that had a "place in our heart," but he was discussing Kropp.

60. Baryak continued that "you [Kropp] may not have any respect for me."

61. Then, he demanded "but its Council. . . you will have respect for the . . . representatives."

62. He then voiced animosity towards a larger group of unnamed critics.

63. Indeed, he then stated that "if anyone else wants to run, put your name on the list . . . you think you can do better, put your name on the list."

64. Then he continued speaking about not being "whipping posts."

65. Thus, Baryak's motion to punish Kropp most certainly was about the First Amendment because he expressly noted in his rationale that (1) he believed Kropp made fun of his disability, (2) Kropp was in their [Council's] hearts, (3) that he believed that Kropp did not respect him, and (4) that Kropp must respect Council.

66. Then, Councilperson Gideon "Bud" Fetterolf ("Fetterolf") provided his motives for punishing Kropp.

67. While trying to explain to the public why Council hired a "special" prosecutor regarding a conflict of interest, Fetterolf stated that it was because Kropp supposedly "harmed Council," and Fetterolf seemed to slip and said that Council was hiring the Special prosecutor to "retaliate."

68. Fetterolf was indeed heard using the precise word "retaliate" in his speech regarding his decision to hire a special prosecutor to charge Kropp.

8

69. Defendant continued chilling speech by threatening more of the public throughout the meeting.

70. After the vote, Zimmermann began to speak during public criticism.[4]

71. Zimmermann began to make critical statements about Mayor Kline's conduct as the mayor.

72. Specifically, Zimmermann criticized the Mayor for removing the minutes of the unlawful emergency meeting from the agenda.

73. Zimmermann, then accused the Mayor of harming a "victim."

74. In direct violation of the injunction to not restrain speech that is personally directed or suggests impropriety, Mayor Kline immediately slammed the gavel and told Zimmermann that he must say it was an "alleged" victim.

75. Thus, Mayor Kline threatened Zimmermann for personally criticizing a government official for conduct because Zimmermann did not use the word "alleged" when citing the behavior.

76. Given that Mayor Kline had previously kicked Zimmermann out of a Council meeting, and Defendant cited him for political signage, the pounding of the gavel was a warning shot meant to chill Zimmermann's speech.

77. Another woman began to speak during public participation.

78. While speaking, she criticized Councilperson Spletzer's conduct.

79. She said the word "damn" during her speech, and Mayor Kline mumbled something about her "language."

---

[4] https://www.youtube.com/watch?v=JW1JADCiB6Y

80. Then, a gentlemen came to the lectern and told the Council he was tired of their "shit."

81. Mayor Kline then again muttered something about language, and he suggested he could not use this word.

82. The speaker then looked at Spletzer and told her she should be ashamed of herself.

83. Mayor Kline then told that citizen he could not do that, which is another slap in the face of this Court's injunction.

84. A couple of speakers later, another woman criticized a councilmember for her conduct.

85. Mayor Kline then interrupted her and told her that she must say the conduct is just "alleged" when suggesting a Councilmember acted unlawfully.[5]

86. Mayor Kline kept insisting to this speaker that "you cannot do that" regarding her accusations of a councilperson's impropriety.

87. Thus, Mayor Kline again violated the injunction to not restrain speech that is personally directed or suggests impropriety.

88. After public participation, Councilperson Baryak, who motioned to hire a prosecutor to retaliate against Kropp, again voiced his animosity towards critical speech.

89. Specifically, Baryak complained about the public's accusations against him.

90. He then continued that "I am going to tell you what I am going to do," "there are a bunch of Charter amendments" that he stated related to "free speech."

---

[5] https://www.youtube.com/watch?v=Q2EbLh8Tilw

91. He then stated that he was against these because "as far as I am concerned," "this is nothing but degrading people who are trying to do an honest job."

92. Thus, Baryak expressed that he believes that "degrading" viewpoints are not free speech.

93. He then continued to criticize people in the public for "throwing stones."

94. Defendant continued to inform the public that it will not tolerate personal accusations and degrading viewpoints.

95. At the end of the meeting, Mayor Kline lectured the public further that it could not make accusations against the councilmembers without making it clear they were just "allegations" because the public could harm the councilmembers' businesses.[6]

96. Apparently, Mayor Kline had not violated this Court's injunction enough at that point.

97. The entirety of the video footage, the events, the actions, and the statements Defendant made at both the October 5th and October 19th meeting exhibit that (1) Defendant exhibits clear animosity towards viewpoints that accuse them of any impropriety or considered "degrading;" (2) Defendant has a pattern and practice of restraining and chilling speech that accuses them of impropriety or degrades them; (3) Defendant was angry with Kropp because they believe he degraded them and did not respect them; and (4) Defendant is retaliating against Kropp because of his viewpoints.

---

[6] https://www.youtube.com/watch?v=-BYdePjTWco

98. Defendant does not respect the First Amendment's protection of critical and degrading viewpoints, and Defendant surely does not seem to respect this Court's orders.

99. Now, Defendant is moving to use its police power to criminally punish Kropp for *allegedly* disrupting its meeting, which is an *alleged* violation of R.C. § 2917.12.

100. R.C. § 2917.12 expressly states the following:

> (A) No person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering, shall do either of the following:
> (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;
> (2) Make any utterance, gesture, or display which outrages the sensibilities of the group.
> (B) Whoever violates this section is guilty of disturbing a lawful meeting, a misdemeanor of the fourth degree.

101. Therefore, R.C. § 2917.12 makes it a crime to even make an "utterance" that "outrages the sensibilities of the group."

102. Defendant Yost is the Ohio Attorney General, and he is the highest agent of Ohio's law enforcement branch.

103. Thus, he has the ultimate power to interpret and apply this Statute to Ohio's citizens.

## COUNT I

## Violations of the First Amendment

104. Kropp restates all previous paragraphs.

105. R.C. § 2917.12 (the Statute") regulates members of the public, and their expression at public meetings.

106. The Statute expressly criminalizes an utterance that "outrages the sensibilities" of a council or other public body.

107. This phrase is vague, and it provides no objective notice to the public on how a speaker can adjust his conduct as to not offend a council and face criminal prosecution.

108. The Statute further provides the unbridled discretion in a decisionmaker to punish speech because an expression offends that decisionmaker's own sensibilities.

109. The Statute is content-based, and it unlawfully regulates and punishes viewpoints.

110. The Statute facially violates the First Amendment of the United States Constitution because it is vague, overly broad, and viewpoint based.

111. The state has no compelling interest in empowering thin-skinned public bodies to punish public critics who offend them with protected speech.

112. Here, Kropp wanted to state his grievances with his local government officials.

113. Defendant's conduct and its councilmembers' character are matters of public concern, and accusations of improper conduct and the poor behavior of one's elected officials are protected expressions under the First Amendment.

114. Kropp made comments *before and during* the meeting that Defendant stated offends its members.

115. Indeed, Councilperson Baryak, who motioned to hire a prosecutor to charge Kropp, expressly stated that Kropp needs to respect his representatives.

13

116.    Another Councilperson stated he was hiring the special prosecutor because Kropp "harmed Council," and he then slipped and let loose the word, "retaliate."

117.    Defendant then spent the rest of the meeting slamming the gavel at speakers and telling them they could not accuse members of Council for impropriety because the public could harm their businesses.

118.    Councilperson Baryak made clear in one of his speeches that he thinks that "degrading" comments from the public do not constitute "free speech."

119.    Defendant's own statements about Kropp's comments, as well as Defendant's expressed animosity towards the public's accusations of their conduct, illustrate that they are not hiring a prosecutor to protect their meetings.

120.    Defendant is hiring a prosecutor to "retaliate" against Kropp's accusations because he did not "respect his representatives."

121.    Defendant is sending a clear message that they will use criminal prosecution to punish offensive accusations, and they have exhibited a pattern of punishing critical speech.

122.    Defendant has no probable cause that Kropp had the purpose to stop the meeting from occurring or finishing.

123.    Kropp had no purpose other than to tell his representatives that he believed they were terrible at their job, and that he wanted them to resign.

124.    Defendant has relied upon a vague, viewpoint-based Statute to chill and retaliate against Kropp.

125.   Kropp must now fear criminal prosecution every time he desires to criticize his elected officials.

126.   Kropp is in imminent fear and threat of prosecution, as Defendant has hired a special prosecutor with the express purpose to "retaliate" against Kropp because they believe he must "respect his representatives."

127.   This Court should declare that the Statute is unconstitutional as a matter of law.

128.   This Court should immediately enjoin Defendant from abusing its power and criminally charging Kropp because he would not "respect his representatives."

129.   This Court should permanently enjoin Defendant from retaliating against Kropp because of his viewpoints.

130.   This Court should enjoin both Defendants from enforcing the Statute, and it should invalidate the Statute generally because it violates the First Amendment.

**WHEREFORE** Kropp respectfully requests that this Court issue judgment in his favor on all counts and award him the following relief:

a.   A declaration that the Defendant Newton Fall's actions constitute a violation of Kropp's First Amendment rights;

b.   A declaration that the Statute violates the First Amendment;

c.   Compensatory damages;

d.   Nominal damages;

e.   Injunctive relief precluding the Defendant Newton Falls from restraining Plaintiff's speech;

f.   Injunctive relief enjoining Defendant Yost from enforcing the Statute;

g.   An award of reasonable attorney fees pursuant to 42 USC § 1988;

h.   Litigation costs and expenses; and

i.   Any other actual damages or equitable relief the Court deems fit under the circumstances.

Respectfully submitted,

**_/s/ Matt Miller-Novak_**
Matt Miller-Novak, Esq.  (0091402)
Barron, Peck, Bennie, &
Schlemmer, Co. LPA
3074 Madison Road,
Cincinnati, OH 45209
Phone: 513-721-1350
Fax:513-721-2301
MMN@BPBSLaw.com

16

## **VERIFICATION**

I, Brian Kropp, verify under penalty of perjury that I have read the facts outlined in this Complaint. I also verify under penalty of perjury the facts outlined in this Complaint are true to the best of my knowledge and recollection.  I have either experienced these events first person, or I have viewed and listened to all these statements through video recording.

_____
Brian Kropp


I, as a notary of the State of Ohio, witnessed the above sign this Affidavit before me on this \_\_\_\_\_ day of _____, 2022, in _____ County, Ohio.

_____
Notary Public